## McCONNAUGHY *v.* PENNOYER *et al.*

*(District Court, D. Oregon. August 18, 1890.)*

**1. CLOUD ON TITLE.**
 A resale and conveyance of a tract of swamp land under the act of 1878, before sold by the state, under the act of 1870, on the ground that it had reverted to the state for the failure to pay the 10 per centum of the purchase price within the time required by law, would cast a cloud on the title of the purchaser or his assignee, under the act of 1870.

**2. MULTIPLICITY OF SUITS.**
 The prevention of a multiplicity of suits is an acknowledged head of equity jurisdiction, and this suit is clearly maintainable on that ground.

**8. ACTION AGAINST STATE.**
 This is not a suit against the state of Oregon or its authorized agents or representatives, but against the defendants, claiming to act as such, but without authority of law. The cases of *In Re Ayers,* 123 U. S. 443, 8 Sup. Ct. Rep. 164, and *Hans* v. *Louisiana,* 134 U. S. 1, 10 Sup. Ct. Rep. 504, considered and distinguished from this.

*(Syllabus by the Court.)*

In Equity. Bill for injunction.

*Mr. Charles B. Bellinger,* for plaintiff.

*Mr. Earl C. Bronaugh,* for defendants.

DEADY, J. On the application of the defendants a rehearing was allowed in this case.

On the argument the case of *Hans* v. *Louisiana,* 134 U. S. 1, 10 Sup. Ct. Rep. 504, was cited by counsel for defendant as a case not referred to, because not at hand, on the former hearing.

On examination, the decision was found not to be at all in point, and it was so admitted by counsel.

Briefly, the case was this: A citizen of Louisiana sued the state to recover the amount of certain coupons annexed to the bonds thereof. These bonds were issued in 1874, and by an amendment to the constitution of that year they were declared valid contracts between the state and the holders thereof, and by the constitution of 1879 payment of

the same was repudiated. The eleventh amendment does not prohibit a suit in the national courts against a state by a citizen thereof, and the judicial powers of the United States extend to all cases arising under the constitution or laws of the United States, (Const. art. 3, § 2,) which jurisdiction is conferred upon the circuit courts by section 1 of the Act of 1875, (18 St. 470.)

So the plaintiff brought his action against the state, as one arising under the constitution of the United States, which forbids a state to "pass a law impairing the obligation of contracts."

The case was a new one, the question involved never having been before the court. It was held that a suit arising under the constitution of the United States cannot be maintained against a state by a citizen thereof, without its consent.

This conclusion rests, in the opinion of the court, on the general doctrine that a state is not suable, except with its own consent, and therefore the grant of judicial power to the United States, though in language extending to all cases arising under the constitution thereof, must be construed as not including a case against a non-consenting state.

But Mr. Justice BRADLEY, who delivered the opinion of the court, in conclusion took care to say, (page 20, 134 U. S., and page 509, 10 Sup. Ct. Rep.:)

"To avoid misapprehension it may be proper to add that, although the obligations of a state rest for their performance upon its honor and good faith, and cannot be made the subject of judicial cognizance unless the state consents to be sued, or comes itself into court, yet, where property or rights are enjoyed under a grant or contract made by a state, they cannot be wantonly invaded. Whilst the state cannot be compelled by suit to perform its contracts, any attempt on its part to violate property or rights acquired under its contracts may be judicially resisted; and any law impairing the obligation of contracts under which such property or rights are held is void, and powerless to affect their enjoyment."

Now, the case under consideration is clearly within this category. While the purchaser of this property may not be able to sue the state to compel a specific performance of its contract to convey the same to him when he is entitled thereto on "reclamation" and payment of the balance of the purchase price, because a "state," in the language of the court, "cannot be compelled to perform its contracts," yet the purchaser has already acquired an interest in this land under his contract with the state, and a right to the possession and enjoyment of the same in the mean time; and any attempt by the state or its agents to deprive him of such interest or right, or to impair the value of the same, contrary to such contract, may be judicially resisted. And that is what the plaintiff seeks to do by this suit.

On the argument counsel for the defendants endeavored to show that this case came within the ruling in *Re Ayers*, 123 U. S. 443, 8 Sup. Ct. Rep. 164.

But the cases are really just the antipodes of each other. The court, in that case, after stating the general rule as laid down in *Hagood* v. *Southern*, 117 U. S. 52, 6 Sup. Ct. Rep. 608, that a suit against the offi-

cers of a state to compel them to do and perform certain acts, which, when done and performed, constitute a performance of an alleged contract by such state, is a suit against the state, say, (page 502, 123 U. S., and page 181, 8 Sup. Ct. Rep.:)

"The converse of this proposition must be equally true, because it is contained in it; that is, a bill, the object of which is by injunction indirectly to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, must also necessarily be a suit against the state."

Now, the plaintiff in this case is not seeking by this suit to compel the performance, directly or indirectly, of any contract with the state.

On the sale of this land under the act of 1870 the purchaser or his assignee became entitled, on payment of the purchase price and proof of reclamation within the time prescribed, to a conveyance from the state.

If this were a suit to compel the specific performance of so much of that contract as remains unperformed by the state,—that is, the execution by these defendants of a conveyance of the land to the plaintiff,—it would be a suit against the state, although not named in the record.

A decree for the plaintiff in such a case would require the defendants to do and perform an act which they could only do as the agents and representatives of the state, and therefore the court would be without jurisdiction.

By this suit the plaintiff is not seeking to compel the defendants to do or perform any act, but rather to prevent their doing an act injurious to his right and interest in this property, without authority of law or the state, and contrary to its express contract.

If the legislature had authorized the defendants to cause suit to be brought against the purchasers under the act of 1870 to declare the contracts of sale void for want of compliance with the conditions subsequent, and the plaintiff should bring a suit to enjoin the defendants from bringing any suit against him, alleging that he was not in default as to any of said conditions, the case would be parallel with *In re Ayers*, and the answer would be the same in each case; this is a suit against the defendants, as agents and representatives of the state, to prevent the state from doing a lawful act, namely, to bring a suit to set aside a sale of its lands, which it claims has become forfeit for want of compliance with the terms of the sale, and in which the plaintiff may allege and show a compliance with the contract, and thereby defeat the suit.

On the rehearing no question was made but that the legislation under which the defendants are acting in making sales of the plaintiff's land is unconstitutional and void, and therefore furnishes no justification for their conduct.

On the hearing it was not seriously questioned that equity would grant the relief sought by the plaintiff in this case if the suit was not one against the state, on the ground of preventing a cloud being cast on his title, and also of preventing a multiplicity of suits.

On this point counsel at the rehearing contended himself with saying

that if the defendants were not authorized to sell this land their deeds thereto would be void on their face, and therefore would not cast a cloud on anything.

But the case assumed by counsel is not this case by any means, for the invalidity of the defendants' deeds would not necessarily appear on their face, if at all.

The defendants have the general and exclusive authority to dispose of the swamp lands of the state, including those which may have reverted thereto for delinquency under section 9 of the Act of 1878. The plaintiff, to overcome the apparent legal title which the sale and conveyance of his land would vest in the defendants' grantee, would be obliged to resort to extrinsic evidence to show that this land had been duly bargained and sold to his grantor, and had not reverted to the state under section 9 of the Act of 1878, and therefore the second sale was unauthorized and wrongful.

This constitutes a cloud on title within all the authorities; and particularly where, as in this case, the plaintiff's interest is equitable in its nature. Pom. Eq. Jur. §§ 1398, 1399; *Coulson* v. *Portland,* 1 Deady, 489. And an injunction will issue to prevent acts which would create a cloud upon title, under the same rules that control in a suit to remove such cloud. Id. § 1345.

The prevention of a multiplicity of suits is a recognized head of equity jurisdiction. Id. § 243 *et seq.*

The defendants are not now authorized to dispose of swamp land in larger quantities than 320 acres to any one person, and that may be sold outright, and a conveyance made to the purchaser at once. The disposition of this large tract of land in this manner may involve at least 150 sales, to as many different persons. If such sales are allowed to be made, the plaintiff will be compelled, in the assertion and maintenance of his right, to bring a separate suit in equity against each of such purchasers to quiet title or to charge him as a trustee of the legal title for the benefit of the plaintiff, the owner of the equitable estate.

This presents a very strong case of a multiplicity of suits, that may be prevented by this suit, in which the whole matter may be considered and determined at once, and thus save expense and delay to all persons concerned.

This suit is very properly brought in this court, independent of the diverse citizenship of the parties, as it turns altogether on federal questions, which must ultimately be settled by the judgment of the supreme court of the United States.

These questions are: (1) Does the legislation under which the defendants are proceeding to sell the plaintiff's land impair the obligation of his contract with the state? and (2) Is this a suit against the defendants as individual wrong-doers, claiming to represent the state, but without authority therefrom, or against them as the authorized representatives of the state?

And my judgment still is that said legislation does impair the obligation of the state's contract; and that this is not a suit against the defend-

ants acting as the authorized agents and representatives of the state, but as individual wrong-doers, acting under an unconstitutional act of the legislature, which is not and cannot be a law of the state, and therefore is no justification for the conduct complained of.